IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA

v.                    CRIMINAL NO. 04-2 ERIE

DANIEL RAY HINES


RESENTENCING



Proceedings held before the HONORABLE

SEAN J. McLAUGHLIN, U.S. District Judge,

in Courtroom C, U.S. Courthouse, Erie,

Pennsylvania, on Tuesday, August 2, 2005.




APPEARANCES:
        MARSHALL J. PICCININI, Assistant United States
        Attorney, appearing on behalf of the Government.

        THOMAS W. PATTON, Assistant Federal Public

Defender, appearing on behalf of the Defendant.

Ronald J. Bench, RMR - Official Court Reporter

2

1          P R O C E E D I N G S

2

3          (Whereupon, the proceedings began at 1:30 p.m., on

4   Tuesday, August 2, 2005, in Courtroom C.)

5

6          THE COURT:  This is the time that has been set for

7   resentencing in the case of United States versus Daniel Ray

8   Hines at Criminal No. 04-2 Erie.  It has been sent back from

9   the circuit in light of Booker.  Is there anything new, Mr.

10  Patton?

11          MR. PATTON:  Your Honor, we would continue to object

12  to the two-level enhancement for the firearm.  But we have no

13  new evidence to present beyond what was presented at the

14  original sentencing.

15      THE COURT:  All right.  That was the only objection,

16  wasn't it, at the original sentencing?

17      MR. PATTON:  Yes.

18      THE COURT:  For the reasons previously set forth on

19  the record on November 22, 2004, relative to the propriety of

20  the enhancement for possession of a firearm, I continue to

21  believe, I am of the opinion, as I was then, that the two point

22  enhancement was appropriate.  I simply incorporate by reference

23  as is fully set forth, my reasons that were articulated on

24  November 22nd.

25      That having been said, the total offense level

3

1  applicable is 31; with a criminal history category of III.

2  Statutory provision as to custody not less than 10 years to

3  life imprisonment.  Guidelines 135 to 168.  Probation is

4  ineligible under both the statutory and guidelines.  Supervised

5  release pursuant to the statutory provision at least five

6  years.  Guideline provisions five.  Statutory provision as to a

7  fine $4 million.  The guidelines $15,000 to $4 million.

8    Restitution is inapplicable under both.  And a $100 special

9    assessment applies both with respect to the statutory and the

10   guideline provisions.

11        Mr. Patton, is there anything you want to say or is

12   there anything that Mr. Hines would like to say?

13        MR. PATTON:  Yes, your Honor, I would like to make

14   an argument and Mr. Hines would like to make a statement.

15        THE COURT:  Okay.

16        MR. PATTON:  To start off the discussion, I'd like

17   to review Mr. Hines' criminal history and what the punishment

18   he has had in the past versus what he's facing today.

19        THE COURT:  All right.

20        MR. PATTON:  Mr. Hines basically has four

21   convictions that he is receiving criminal history points for.

22   The first conviction is for the reckless operation of a motor

23   vehicle, driving under a suspension and furnishing false

24   information.  He received a sentence of 30 days custody, with

25   27 days suspended.  And he served a grand total of three days

4

1    in custody for that offense.

2          THE COURT:  When was that?

3          MR. PATTON:  That sentence was imposed in April of

4  1996.  After there was some failures to pay some fines and so

5  he was brought back into court several times, but never had any

6  new sentence of imprisonment imposed upon him.

7          THE COURT:  All right.

8          MR. PATTON:  And he received a criminal history

9  point for that offense.  He then received, was convicted of

10  driving without a driver's license.  And was sentenced to 180

11  days imprisonment, with 150 days suspended.  He failed to

12  report.  He was arrested, started serving the 30 days, ended up

13  serving 42 days before he was released upon paying his costs

14  and fines in full.  So that was 42 days of imprisonment

15  involved there.  He received a criminal history point for

16  possession of drug paraphernalia, where he was fined $250.

17  Where he had a pipe, rolling papers and a hemostat, which I'm

18  assuming is a fancy word for a roach clip to smoke a joint.

19          THE COURT:  What did they call it?

20          MR. PATTON:  Hemostat.  That was a straight fine.

21  Then he receives a point for falsification, resisting arrest,

22  where he was stopped for a speeding violation, gave a false

23  name, but then turned over his wallet, so the police then had

24  his correct identity.  He then ran from the police, who then

25  just sent a summons to his home since they had his home

5

1  address.  And Mr. Hines appeared in court, pled guilty to this

2  offense, and was given credit for 17 days served.  He was

3  sentenced to 180 days, with 163 days suspended, he received

4  credit for 17 days served.

5       Those are the convictions for which he received

6  criminal history points.  So if you add those up, he was

7  incarcerated for a total of 62 days.  He also received two

8  criminal history points because he was on probation at the time

9  of the federal offense.

10       THE COURT:  All right.

11       MR. PATTON:  That's what gets him to criminal

12  history category III.  And the reason I start with this is that

13  you now have to decide whether the punishment is sufficient,

14  but not greater than necessary to comply with the sentencing

15  purposes that are listed in 18 United States Code, Section

16  3553(a)(2).  And that language is important and I think it

17  sometimes doesn't get the notice it deserves, that is the

18  directive to you to impose a sentence that is sufficient, but

19  not greater than necessary to achieve these sentencing

20  purposes.

21        We know that Mr. Hines is looking at a 10 year

22  mandatory minimum sentence in this case.  So that sets the

23  absolute floor.  And so then the question becomes if 120 months

24  is the floor, the guidelines call for 135 to 168 and you

25  imposed a sentence of 140 months originally, treating the

6

1  guidelines as binding.  But what is there in the 20 extra

2  months of incarceration, or to put it another way, how is 120

3  months not sufficient to achieve the goals of reflecting the

4  seriousness of the offense and to promote respect for the law,

5  provide just punishment for the offense.  How is 120 months not

6  sufficient, and somehow this extra 20 months are needed to

7  convince people that this offense is serious.

8        THE COURT:  Excuse me for interrupting you, is he

9  looking at any state charges?

10        MR. PATTON:  He is, your Honor.  I was present at

11  Ms. Munnings resentencing earlier today.  When Mr. Misko gave

12  kind of a rundown of the sentences that Ms. Munnings is looking

13  at.  Mr. Hines is looking at virtually the same situation.  The

14  charges that are pending in Crawford County are all based on

15  arrests that were listed in the offense conduct section of the

16  presentence report, and were also listed in the affidavit in

17  support of the search warrant in the federal case.  These are

18  all instances where there is basically a traffic stop, every

19  time Mr. Hines and Ms. Munnings were stopped, they had some

20  type of drug paraphernalia in their car.  As Mr. Misko

21  explained to you this morning, the plea agreement that has been

22  reached in Crawford County is that Mr. Hines pled to one felony

23  drug count, a possession with intent to distribute, I

24  believe -- it's either two or three misdemeanor counts of

25  possession and -- one count for possessing a prohibitive

7

1  offensive weapon, a switchblade.

2        THE COURT:  Just so I'm clear, the state charge, the

3  charges to which he has pled, they grow out of the same

4  operative set of facts that form the subject matter of this

5    indictment?

6        MR. PATTON:  They do in the sense that yes, it was

7    all information that was used to obtain the federal search

8    warrant.  It's information that was listed in the presentence

9    report as offense conduct.  Now, the controlled substances that

10   are at issue in those offenses were not included in calculating

11   Mr. Hines' base offense level here, I want to make that clear.

12   But I do believe it's clear from the search warrant application

13   and the presentence report that this is all part of the

14   methamphetamine manufacturing that led to Mr. Hines' conviction

15   here.  And the plea in Crawford County is that there is no

16   agreement as to what sentence the judge is going to impose,

17   other than the sentences on the state counts will be concurrent

18   with one another, but then the total sentence is going to be

19   consecutive to the federal sentence.

20       THE COURT:  All right.

21       MR. PATTON:  In this case adding 20 months on to a

22   120 mandatory minimum, I would submit, is not going to

23   materially advance the goals of sentencing set forth in the

24   statute.  If someone is not going to be deterred from

25   manufacturing meth by a sentence of 120 months, it is

8

1    unreasonable to believe that a sentence of 140 months will

2    somehow put this perspective meth manufacturer over the edge in

3    saying, well, for 120 months I'd do it, but 140 months is too

4    much. I just don't think that is realistic.

5         To protect the public from further crimes of the

6    defendant. If your Honor will recall, I'm sure you probably

7    read the transcript from the previous sentencing, Mr. Hines

8    gave a very heartfelt and sobering statement on his behalf by

9    saying that unfortunately for him it took getting incarcerated

10   and facing this magnitude of sentence to get his mind clear so

11   that he can look back and truly understand how bad his decision

12   making was. When I was talking with Mr. Hines earlier today

13   upstairs in the Marshal's lockup, just the sense from him of

14   disbelief, that how could I have been doing this stuff. Now,

15   having not being under the influence of methamphetamine, being

16   able to think clearly and looking back, just having a hard time

17   fathoming that you could get so deeply involved with it that

18   your decision making is that bad.

19        And with that I would submit, and Mr. Hines wants to

20   make a statement to your Honor again today, a 120 month

21   sentence is sufficient to deter, to protect the public from Mr.

22   Hines.  Especially when you throw in the fact that he got

23   consecutive time in Crawford County, that's what he's looking

24   at.  And that once that Crawford County time is finished and he

25   is physically released, his five years of federal supervised


9


1   release will start to run.  Those five years of supervised

2   release do not run while he is incarcerated on the Crawford

3   County sentence.  They do not begin to run until he is

4   physically released from the Crawford County sentence.

5        THE COURT:  In other words, he can't be on

6   supervised release federally while he's in state jail?

7        MR. PATTON:  Exactly.  So the court will have the

8   assurance that Mr. Hines will be monitored for five years after

9   he comes out of his combined sentences here in federal court

10   and Crawford County.  And that can help assure the court of the

11   safety of the community.

12        Now, in our case the kinds of sentences available is

13   pretty much -- doesn't mean anything because there has to be a

14   sentence of imprisonment.  So that is kind of a non-factor

15  here.

16      Now, you get to the Sentencing Guidelines.  That you

17  have to consider the Sentencing Guidelines.  And I would submit

18  that in the wake of Booker, if the only change that is made in
        ‾‾‾‾‾‾

19  sentencing is the insertion of the word advisory before the

20  word guidelines, but then the process continues to roll along

21  the same as it always did before and always sentence within the

22  guidelines, that, if not violating the letter of Booker, it
                                                ‾‾‾‾‾‾

23  certainly violates the spirit of Booker.  And it is in practice
                                     ‾‾‾‾‾‾

24  or another way to put it, as applied, it violates the Booker
                                                          ‾‾‾‾‾‾

25  principles.  If a sentence within the guidelines are always


                              10


1  imposed, simply calling them advisory, that really doesn't fix

2  the problem.

3      And that leads into the next factor, which is the

4  need to avoid unwanted sentencing disparities.  Of course the

5  big argument behind the guidelines is that all similarly

6  situated people receive similar sentences.  But in reality the

7    guidelines don't achieve that.  What is by pure happenstance

8    the facts that are found at a particular time, say a federal

9    search warrant gets served, can have a huge impact on the

10   sentences that two different defendants are looking at.  If

11   both defendants have firearms, have used firearms in

12   distributing drugs, but one of them happens to not have a gun

13   around at the time the feds come in, so they don't find it,

14   that person can walk away with a much more lower guideline

15   range than the person who happens to have the firearm present

16   when the feds or the state law enforcement show up.  So even

17   though the defendants have been engaging in the same real

18   conduct, just by the particular facts as they stand at the time

19   the investigation proceeds, they can end up looking at very

20   different sentences.  And another way that comes is through

21   cooperation.  And it's complete luck, it's complete luck as to

22   whether or not a defendant has information that the federal

23   government is going to be able to use to prosecute someone.  If

24   they're lucky enough to have that, they can end up getting a

25   sentence that is half as long as the next person who

11

1    distributed the same amount of drugs, who just doesn't happen

2    to be lucky enough to have information about someone else.  In

3    this case Mr. Hines cooperated.  We met with DEA, gave them an

4    extensive proffer, gave them extensive information about the

5    gentleman who taught Mr. Hines how to manufacture meth.  The

6    gentleman involved with the meth that Mr. Hines was

7    manufacturing was going to, but unfortunately for Mr. Hines,

8    the government doesn't have enough information to proceed with

9    a charge against that individual.

10         THE COURT:  So he didn't get a 5K?

11         MR. PATTON:  Correct.  So while the guidelines on

12   its surface have this general appeal that following them will

13   not result in unwarranted disparities, that really in practice

14   that isn't the way it works out.

15         And, of course, there is no need for restitution in

16   this case as your Honor has found that there is no restitution

17   owing.

18         I would simply, I would respectfully ask the court

19   to articulate why, if it feels a sentence above 120 months is

20   necessary, why 120 months isn't sufficient to meet those goals,

21   but that somehow an extra 15 or 20 months does meet those

22  goals.

23      THE COURT:  I do take your point.  And it's a point

24  you made before very well with other sentences as well.  Then

25  what is the purpose of the enhancement.  The enhancement stands

12

1  on its own two feet.  Obviously, the Sentencing Commission in

2  its wisdom, if you will, decided that on top of what minimum

3  sentence a judge may be required to pass out, if someone

4  possesses a firearm in connection with drug activity, then that

5  merits some additional add on.  What about that?

6      MR. PATTON:  I can't argue that if someone is using

7  or has a weapon present while distributing drugs, it is

8  actually using that weapon to further the drug distribution,

9  that that is a factor that can be considered and is properly

10  considered.  There's a couple qualifications to that.  The

11  guidelines say if a gun is even around, give the enhancement,

12  without any finding or any evidence that the gun was used in

13  any way, shape or form to further the drug activity.  There is

14  a statute, 18 United States Code, Section 924(c), that

15  criminalizes using of a firearm in connection with or in

16    furtherance of a drug offense.  That requires proof that the

17    firearm was actually possessed or carried in furtherance of a

18    drug transaction.  The guideline enhancement does not require

19    that link.  In this case there was no evidence presented that

20    these firearms were ever used to threaten someone or is in any

21    way to materially advance the conspiracy to manufacture

22    methamphetamine.  And so the guideline enhancement lacks the

23    link, the logical link between calling for a higher sentence in

24    a drug case when a gun is present, that is true if the gun is

25    somehow used to make that drug offense more serious.  But


13


1    without that extra finding, then the basis for increasing the

2    sentence loses its force.

3        The other argument, your Honor, is that, and I know

4    I've argued this to you before, but that the Sentencing

5    Guidelines in their treatment of drug offenses is out of line

6    with all other federal sentences and state sentences.  The

7    American Bar Association has studied the issue at the urging of

8    Justice Kennedy.  And have written a very lengthy report

9    explaining how federal drug sentences are just completely out

10  of line with state drug sentences, state violent crime

11  sentences, with other federal sentences.  And so that the

12  guidelines -- getting a base offense level itself is

13  overstated.  And I understand methamphetamine is an addictive

14  drug.  I understand at this point in time in northwestern

15  Pennsylvania methamphetamine is -- it's not so much newer

16  anymore, but it's still a fairly recent phenomenon.  Back in

17  the late '80s, early '90s, when crack cocaine was hitting, the

18  press behind it, the reaction to it was this was the end of the

19  world.  This drug is different than any other drug, it's going

20  to cause complete destruction.  And crack cocaine is a terrible

21  thing, but it's not the end of the world as we know it.  The

22  sad truth of it is after it's been around long enough, for the

23  markets to establish themselves, people can get set up, it's

24  like all other drugs, it becomes a part of the community and

25  part of the overall economy.  And nobody for the past couple


14


1  thousands of years has ever been able to persuade individuals

2  who are leaning towards using drugs to stop.  At least not

3  through the criminal justice process.

4          And so I would just strongly urge your Honor to just

5    think about taking somebody who's only served a total of 62

6    days and saying okay, this is a very serious offense, there

7    needs to be serious punishment.  And everyone understands that.

8    But going from having served 62 days to 3,650 days is a massive

9    increase that does send the message to the public that this is

10   an incredibly serious offense, and to Mr. Hines that it's a

11   serious offense and you have to be punished accordingly.  But

12   the extra 15 or 20 months doesn't have to be there.  It doesn't

13   have to be there to satisfy the factors that you are to

14   consider when imposing a sentence, and when you are told that

15   the sentence is supposed to be sufficient, but not greater than

16   necessary to achieve those goals.

17          THE COURT:  All right, thank you, Mr. Patton.  Mr.

18   Hines, do you have something you want to say?

19          THE DEFENDANT:  Yes.  Your Honor, when I was doing

20   drugs, I never realized how bad it was for me or anybody else

21   around me.  Now I see that what it has done to me and my

22   family.  My kids don't even have no dad no more.  I can't even

23   explain how bad I feel about it.  But I'm just sorry for what

24   I've done.  Pretty near everyday I'd like to go back to working

25   and have a regular life again.

15

1        THE COURT:  Refresh my recollection, how many kids

2  do you have and what are their ages?

3        THE DEFENDANT:  Four.  One is six and the others are

4  13, 14 and 16.

5        THE COURT:  All right.  Is there anything else you

6  want to tell me?

7        THE DEFENDANT:  I'm just sorry, your Honor.

8        THE COURT:  All right.

9        MR. PATTON:  Your Honor, one other thing.  Even if

10  Mr. Hines is admitted into the federal drug treatment program

11  because of the finding that there were firearms involved in

12  this offense, he will not receive a reduction.

13        THE COURT:  He won't get any credit?

14        MR. PATTON:  Correct, they may let him into the

15  program, but he will not receive any reduction in his sentence

16  because this will be classified as a violent offense.  So,

17  therefore, he's ineligible receiving a reduction in sentence.

18        THE COURT:  All right, thank you, Mr. Hines.

19        THE DEFENDANT:  Thank you.

20        THE COURT:  All right, Mr. Piccinini.

21        MR. PICCININI:  Thank you, your Honor.  I won't

22   belabor this point.  I don't want to step away from the claims

23   with regard to the post Booker sentencing realm that we're in
             _____

24   today.  And counsel argued, as he's argued in other cases, on

25   behalf of Mr. Hines, that if after Booker all you were to do
             _____


                                  16


1   was to impose a guideline sentence, then you are violating at

2   least the Booker principle, the spirit of the Booker case.  But
            _____                  _____

3   all of that argument assumes that the Sentencing Guidelines

4   themselves are this group of rules that were not put together

5   by a sound, reasoned commission, who really thought out, not

6   just on behalf of the government, but on behalf of the entire

7   criminal justice system and the court, who really put a lot of

8   thought into sentencing structure.  And if you take away the

9   assumption that they're completely unreasonable and that they

10   should have never existed, then what you're dealing with in a

11   post Booker world is determining whether, after looking at the
         _____

12  guidelines, you also have, as an independent judge exercising

13  his discretion, find what the guidelines have found to be

14  reasonable.  In this case there is a good example of that.

15  Because what we're talking about here today is the difference

16  between a 10-year mandatory minimum sentence that would apply

17  to any methamphetamine manufacturer, like Mr. Hines and Ms.

18  Munnings, who would walk into this courtroom.  Whether they

19  have a firearm or not, if they walk into this courtroom,

20  they're looking at a mandatory minimum sentence.  The

21  guidelines provide guidance to courts, reasonable guidance as

22  to why you should increase a particular sentence because of the

23  presence of firearms.  And in the commentary of the guidelines

24  it says specifically, "the enhancement for weapon possession

25  reflects an increase danger of violence when the drug

17

1  traffickers possess weapons."  This is in writing.  This is the

2  explanation the Sentencing Commission gives for increasing

3  sentences beyond the 120, to in this case a range of 135 or

4  140.

5           So the question for yourself, your Honor, in a post

6   Booker world, would you agree with the statement as an

_____

7   independent judge exercising his discretion within the

8   sentencing realm from here on out that the enhancement for

9   weapon possession by you would reflect an increased danger of

10  violence when drug traffickers possess weapons.  Because if you

11  don't recognize it in this particular case, then the mandatory

12  minimum sits by itself and the difference between Mr. Hines and

13  Ms. Munnings with guns and the methamphetamine manufacturer or

14  drug dealer without guns, there is no difference.  So the

15  question for you is, is there a reason for an enhanced sentence

16  when firearms are present.  I believe that's reasonable under

17  the guidelines.  I believe it would be reasonable for the court

18  to exercise its discretion.

19         With regard to unwarranted disparities.  You

20  sentenced Ms. Munnings this morning.  The government would have

21  no problem with you sentencing Mr. Hines to the same level.  I

22  don't perceive that counsel has argued that there is a

23  difference in the relative roles.  And the sentence would be

24  appropriate.  A sentence beyond the mandatory minimum was

25  appropriate a year and a half ago, it is appropriate today.

1     And just a note that I made at the first sentence.

2   Mr. Hines comes in here, unlike a lot of defendants, seems to

3   sincerely believe the things that he says.  I'd love to see him

4   write a letter to the Crawford County Meadville Tribune and to

5   the Oil City Derrick, to those people who are completely

6   inundated with methamphetamine because those people, who are

7   about to go to jail for 135 months, could hear from somebody

8   who's experiencing this right now, so we don't have to come

9   back to the courtroom.  I would just make the comment that

10  although he does seem sincere, it doesn't change the

11  seriousness of what he did.

12     THE COURT:  All right, I'm going to take a few

13  minutes, then come out and sentence.

14     (Recess from 1:58 p.m.; until 2:02 p.m.)

15     THE COURT:  In the wake of United_States_v._Booker,
       _____ _____ __ _____

16  the Sentencing Guidelines, as we have discussed more fully at

17  this sentencing today, are of course advisory.  However, I'm

18  still obligated to consult those guidelines in determining the

19  appropriate sentence.

20          In addition to the Sentencing Guidelines under

21    Booker, I must also consider other factors that are set forth

_____

22    in 3553(a), which require courts to impose a sentence

23    "sufficient, but not greater than necessary" to comply with the

24    purposes set forth in paragraph two.  Section 3553(a)(2),

25    states that such purposes are:


                              19


1          (A)  to reflect the seriousness of the offense, to

2    promote respect for the law, and to provide just punishment for

3    the offense;

4          (B)  to afford adequate deterrence to criminal

5    conduct;

6          (C)  to protect the public from further crimes of

7    the defendant; and

8          (D)  to provide the defendant with needed

9    educational or vocational training, medical care, etc.

10          The commentary goes on to direct that the sentencing

11    courts consider; (1) the nature and circumstances of the

12    offense and the history and characteristics of the defendant;

13    the kinds of sentences available; the need to avoid unwanted

14   sentencing disparities among defendants with similar records

15   who have been found guilty of similar conduct; and the need to

16   provide restitution to any victims of the offense.  Of course,

17   not all of those individual considerations are always relevant.

18   However, in fashioning this sentence, I have carefully

19   considered the advisory guideline range, as well as the other

20   factors which I have just articulated.

21        As I have said before, it remains my opinion that

22   methamphetamine distribution is a very serious crime.  It's

23   obviously very detrimental to the health, both physical and

24   mental, of people who are involved, but is also extremely --

25   it's also very dangerous to those who happen to reside in the


                                20


1   vicinity of where the drug is being made, given its combustible

2   nature.  In a crime like this, particularly given the spread of

3   methamphetamine in this area, deterrence is, in my view, a very

4   important aspect, as is protection of the public.  And so

5   having carefully considered all of those factors, I fashion the

6   following sentence.

7        Would you please stand, Mr. Hines.  Let me also say

file:///A|/HINES8-2.TXT

8  that as a distinct component of this sentence, I think it is

9  entirely appropriate for the court to consider, as a distinct

10  element of this sentence, the fact that I did find the reckless

11  conduct to support the enhancement for possession of a firearm.

12  And that it would be inappropriate to fashion a sentence to

13  disregard that.

14       Consequently, pursuant to the Sentencing Reform Act

15  of 1984, it is the judgment of the court that the defendant,

16  Daniel Ray Hines, is hereby committed to the custody of the

17  Bureau of Prisons to be imprisoned for a term of 135 months.

18       Upon release from imprisonment, the defendant shall

19  be placed on supervised release for a term of five years.

20       Within 72 hours of release from the custody of the

21  Bureau of Prisons, the defendant shall report in person to the

22  probation office in the district to which this defendant is

23  released.

24       While on supervised release, the defendant shall not

25  commit another federal, state or local crime; shall comply with

21

1  the standard conditions of supervision recommended by the

file:///A|/HINES8-2.TXT

2  Sentencing Commission and adopted by this court; and shall

3  comply with the following additional conditions.

4      One.  The defendant shall not illegally possess a

5  controlled substance.

6      Two.  The defendant shall not possess a firearm or

7  destructive device.

8      Three.  The defendant shall participate in a program

9  of testing and, if necessary, treatment for substance abuse as

10  directed by the probation officer, until such time as the

11  defendant is released from the program by the probation

12  officer.

13      Further, the defendant shall be required to

14  contribute to the costs of services for any such treatment in

15  an amount determined by the probation officer but not to exceed

16  the actual cost.

17      The defendant shall submit to one drug urinalysis

18  within 15 days after being placed on supervision and at least

19  two periodic tests thereafter.

20      It is further ordered that the defendant shall pay

21  to the United States a special assessment of $100, which shall

22  be paid to the United States District Court Clerk forthwith.

23          I find the defendant does not have the ability to

24   pay a fine, consequently, I will waive a fine in this case.

25          Mr. Hines, do you understand you do have the right


                              22


1   to appeal this sentence, but if you choose to do so, you must

2   do so within 10 days; do you understand that?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Is there anything further?

5          MR. PATTON:  No, your Honor.

6          MR. PICCININI:  No, your Honor.

7          THE COURT:  Then we're done.

8

9          (Whereupon, at 2:08 p.m., the Resentencing

10   proceedings were concluded.)

11

12

13                    - - -

14

15

16

17

18

19

20

21

22

23

24

25

23

1          C E R T I F I C A T E

2

3

4      I, Ronald J. Bench, certify that the foregoing is a

5   correct transcript from the record of proceedings in the

6   above-entitled matter.

7

8

9

10   _____

11  Ronald J. Bench

12

13

14

15

16

17

18

19

20

21

22

23

24

25