IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | C.A. No.: 04-2 ERIE |
| vs. | : | |
| | : | |
| | : | |
| DANIEL RAY HINES, | : | |
|     Defendant. | : | |

**DEFENDANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Defendant Daniel Ray Hines ("Hines"), through his counsel, files the following proposed findings of fact and conclusions of law.

## I.   FINDINGS OF FACT

1. On August 25, 2004, Hines pled guilty to one count of conspiracy to manufacture, and to possess with intent to distribute, 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 846.

2. On November 22, 2004, Hines was sentenced to a term of imprisonment of 140 months to be followed by five years of supervised release.

3.  Prior to the sentencing hearing, Hines' attorney, Assistant Federal Public Defender Thomas Patton, filed an objection to the two-level enhancement in the offense level that was based on the allegation that Hines possessed firearms.

4.  A hearing was held on the enhancement objection on November 22, 2004. Following the hearing, the Court denied Hines' objection, and ruled that the gun enhancement was applicable.

5.  On December 1, 2004, Hines, through his attorney, filed a notice of appeal based on the gun issue and other issues.

6.  On June 3, 2005, the Third Circuit Court of Appeals vacated Hines' sentence and remanded Hines for resentencing.

7.  On August 2, 2005, the resentencing was held before the Court. At the resentencing, Attorney Patton continued to object to the two-level enhancement for the firearm. (Resentencing Tr. at 2). The objection was denied. (Id.)

8.  At the resentencing, Attorney Patton also argued that the gun enhancement would effect Hines' sentence in another way:

> MR. PATTON:   Your Honor, one other thing. Even if Mr. Hines is admitted into the federal drug treatment program, because of the finding that there were firearms involved in this offense, he will not receive a reduction.
>
> THE COURT:   He won't get any credit?
>
> MR. PATTON:   Correct, they may let him into the program, but he will not receive any reduction in his sentence because this will be classified as a violent offense. So, therefore, he's ineligible receiving a reduction in sentence. (Resentencing Tr. at 15)

9.  The Court resentenced Hines to a term of 135 months, to be followed by five years supervised release.

10.     After the resentencing, Hines told Attorney Patton that "I'd like to try it again, to have another appeal." Attorney Patton replied that "he didn't think it would really do any good." (Evidentiary Hearing Tr. at 6, 11, 12, 14, 16, 17).

11.     Hines wanted to appeal the new sentence because he wanted to eliminate the gun enhancement so he could take the drug program in prison. (Evidentiary Hearing Tr. at 11-14).

12.     Hines was quickly escorted from the Courtroom by the U.S. Marshall Service without any further conversation with Attorney Patton. (Evidentiary Hearing Tr. at p. 6, 17).

13.     Based on his statement that "I'd like to try again," Hines assumed that his appeal was going to be filed by Attorney Patton. (Evidentiary Hearing Tr. at 6, 17).

14.     Hines did not hear anything from Attorney Patton for six months. (Evidentiary Hearing Tr. at p. 7). Hines assumed that Attorney Patton had "filed the appeal and it was just taking a while to hear anything about it." (Evidentiary Hearing Tr. at p.7).

15.     Hines had his mother, Mary Ann Hines, call Attorney Patton to inquire about the status of the appeal. (Evidentiary Hearing Tr. at 7, 45-46).

16.     Mrs. Hines asked Attorney Patton if he had filed an appeal for Dan Hines, and he told her that he didn't. Attorney Patton told Mrs. Hines he did not file an appeal because the appeal wouldn't do Hines any good. (Evidentiary Hearing Tr. at 46).

17.     When Mrs. Hines told Dan Hines about the conversation and the fact that an appeal had not been filed, Dan Hines became "very upset." (Evidentiary Hearing Tr. at 46).

18.     This was the first time Hines became aware that an appeal had not been filed on his behalf. (Evidentiary Hearing Tr. at 7).

19.     Attorney Patton was appointed to represent Hines for the entire proceedings, and Hines did not have to pay for an attorney. (Evidentiary Hearing Tr. at 7). Thus, it would not have cost him any money to appeal his resentence.

20.     There was no reason why Hines wouldn't have appealed the gun enhancement issue. (Evidentiary Hearing Tr. at 8).

21.     Hines filed his 28 U.S.C. § 2255 motion in July 2006. (Evidentiary Hearing Tr. at 8). He waited until then because he didn't know he could file a 28 U.S.C. § 2255 motion regarding this issue. (Evidentiary Hearing Tr. at 8).

22.     Attorney Patton repeatedly testified that he doesn't recall whether Hines asked him to appeal. (Evidentiary Hearing Tr. at 28-30, 35, 38, 43).

23.     Attorney Patton's secretary sent an e-mail on August 9, 2005 to the Federal Public Defender's appellate office in Pittsburgh, PA indicating "no appeal" for Hines. (Evidentiary Hearing Tr. at 27-28).

24.     Attorney Patton did not remember talking to Mrs. Hines about the appeal issue. (Evidentiary Hearing Tr. 31).

25.     Attorney Patton handles approximately 80-125 cases per year as an Assistant Federal Public Defender. (Evidentiary Hearing Tr. at 38).

26.     Attorney Patton does not believe that the gun enhancement issue is a frivolous issue for appeal. (Evidentiary Hearing Tr. 34, 42).

27.     Attorney Patton testified that… "if we talked about an appeal and he thought he asked me to do it and I didn't clarify that with him one way or the other, then that's my fault for not clarifying it with him." (Evidentiary Hearing Tr. at 66).

28.     Attorney Patton further testified that, "[I]t's up to me to determine whether the client wants to appeal or not. And if I don't, in my opinion, if I don't do a sufficient job so that I know whether or not it's clear to me whether or not the person wants to appeal or doesn't want to appeal, then I haven't done my job right." (Evidentiary Hearing Tr. at 69-70).

## II.     CONCLUSIONS OF LAW

### A.     THE LEGAL STANDARDS

The Third Circuit recently reiterated the standards to be followed in a habeas corpus case in which a defendant claims that he was denied his Sixth Amendment right to effective assistance of counsel because his counsel failed to file an appeal. In Harrington v. Gillis, et. al., 456 F. 3d 118, 125-126 (3d Cir. 2006), the Third Circuit held:

> In *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court established a two-pronged test to evaluate *Sixth Amendment* claims of ineffective assistance of counsel. An individual making such a claim must show: (1) that "counsel's performance was deficient," which is measured by "reasonableness under prevailing professional norms;" and (2) that counsel's "deficient performance prejudiced the defense." *Id*. at 687-90.
>
> Where the basis of a defendant's ineffective assistance claim is counsel's failure to appeal, a more specific version of the *Strickland* standard applies,

*Roe v. Flores-Ortega*, 528 U.S. at 484. In *Flores-Ortega*, the Supreme Court rejected a California rule that "a habeas petitioner need only show that his counsel's failure to file a notice of appeal was without the petitioner's consent" in order to prove ineffective assistance of counsel. *Id.* at 475-76. The Court deemed any such per se rule "inconsistent with *Strickland's* holding that 'the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 478 (quoting *Strickland*¸ 466 U.S. at 688).

In place of a per se rule, the Court prescribed a circumstance-specific analysis. *Id.* The first step in that analysis is to determine whether counsel consulted **(n3)** with his client regarding an appeal:

> the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal…If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal… If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance.

*Id.* The Court in *Flores-Ortega* then prescribed a modified version of the *Strickland* test to determine when such failure to consult with a client regarding an appeal constitutes deficient performance:

> counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Id.* at 480. A showing of either of these factors will prove deficiency and therefore satisfy the first *Strickland* prong. *Id.* at 479-80.

> **n3 The Court defined "consult" as "advising the defendant about the advantages and disadvantages of taking an appeal and making a reasonable effort to**

>discover the defendant's wishes." *Flores-Ortega*, 528 U.S. at 478. (emphasis added)

To satisfy the prejudice prong in *Strickland*, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484. The Court identified factors that are likely to be relevant in making this determination, *id.* at 480, including whether the defendant pled guilty, *id.* at 485. The Court reasoned that a guilty plea decreases the likelihood of appealable error and may indicate the defendant's desire to end all judicial proceedings quickly. *Id.* at 480. Other factors include the trial court's instructions to the defendant regarding his right to appeal and any waiver of a right to appeal in a plea bargain agreement. *Id.* Evidence of "nonfrivolous grounds for appeal" may also help prove the second *Strickland* prong. *Id.* at 479-80. The Court also stressed that a court adjudicating a claim of ineffective assistance of counsel must take all relevant circumstances into account. *Id.* at 480, 485.

Additionally, in deciding whether the second *Strickland* prong has been satisfied, "evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant." *Id.* at 485. Although nonfrivolous grounds may *support* a defendant's claim, it "is unfair to *require* a ... defendant to demonstrate that his hypothetical appeal might have merit." *Id.* at 486. A defendant's inability to demonstrate potential merit "will not foreclose the possibility that he can satisfy the prejudice requirement." *Id.*

**B.   HINES HAS MET ALL THE REQUIREMENTS OF *HARRINGTON V. GILLIS*.**

**1.   Counsel did not follow Hines' express instructions with respect to an appeal.**

The first step in an analysis of a defendant's ineffective assistance of counsel claim based on a failure to appeal is to determine whether counsel consulted with his client regarding an appeal. Harrington v. Gillis, 456 F.3d at 125. If counsel consulted with the defendant, counsel

performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions to appeal. Id. (quoting Roe v. Flores-Ortega, 528 U.S. 470, 478 (2000)).

Here, the evidence is uncontradicted that Hines told his counsel "I would like to try again." (Evidentiary Hearing Tr. at 6, 13). Hines testified at the habeas corpus hearing that in his brief conversation with Attorney Patton after his resentencing, he was told by Attorney Patton that Attorney Patton "didn't really think it would do any good." (Evidentiary Hearing at 6). Hines replied, "let's try it again." Either Attorney Patton did not understand him, or did not hear him, or just forgot, but for whatever reason, Attorney Patton did not file an appeal.[1] Therefore, Hines has satisfied the first prong of Strickland v. Washington, 466 U.S. 668, 479-80 (1984).

A factor strongly supporting this conclusion is that there was absolutely no reason why Hines would not ask Attorney Patton to appeal, even if the chance of success on appeal was slim. First, Hines was not paying Attorney Patton; Attorney Patton was appointed, so it would not cost Hines anything. Second, Hines had already benefited from one successful appeal, and there was no reason he wouldn't try again. Third, the issue on appeal – the gun enhancement – was a critical issue for Hines, since the enhancement was preventing him from entering the drug program in prison, and possibly reducing his sentence. Under these circumstances, there is no reason for Hines not to appeal.

Moreover, Hines' testimony is further supported by his mother, Mary Ann Hines, who testified that she was told by her son that he believed there was an appeal pending. Mrs. Hines then checked the status of the appeal with Attorney Patton, (a conversation that Attorney Patton

---

[1] Attorney Patton handles 80-125 federal criminal cases a year, so it would not be shocking if a single request for an appeal somehow slipped through the cracks.

doesn't recall), and she was told that an appeal had not been filed. Mrs. Hines testified that her son was "very upset" when he learned an appeal had not been filed.

Therefore, since counsel did not follow Hines' express instructions to file an appeal, Hines has satisfied the first Strickland prong.

## 2.     Counsel for defendant did not conduct an adequate "consult" under *Flores-Ortega.*

The Supreme Court has defined "consult" as "advising the defendant about the advantages and disadvantages of taking an appeal and making a reasonable effort to discover the defendant's wishes." Flores-Ortega, 528 U.S. at 478.

Here, the only consult after the resentencing was when Attorney Patton informed Hines that he didn't believe an appeal would be successful. Then the U.S. Marshall Service whisked Hines away from the courtroom. There was no testimony – either from Hines or Attorney Patton – that Attorney Patton "advised defendant about the advantages and disadvantages" about taking an appeal, or that Attorney Patton "made a reasonable effort to discover defendant's wishes." Indeed, if such an effort had been made, Hines would undoubtedly have instructed Attorney Patton to appeal – what did Hines have to lose?

Attorney Patton supported this conclusion of law regarding his consult:

> ATTORNEY PATTON:     …[I]f we talked about an appeal and he thought he asked me to do it and I did not clarify that with him one way or another, then that's my fault for not clarifying it with him. (Evidentiary Hearing Tr. at 66)

\*     \*     \*

> ATTORNEY PATTON: I believe what I had said [in response to an earlier question by the Assistant U.S. Attorney] was that it's up to me to determine whether the client wants to appeal or not. And if I don't, in my opinion, if I don't do a sufficient job so that I know whether or not it's clear to me whether or not the person wants to appeal or doesn't want to appeal, then I haven't done my job right. (Evidentiary Hearing Tr. at 69-70).

Therefore, in the alternative, the first prong of <u>Strickland</u> is satisfied here since counsel for Hines did not adequately consult with him about an appeal.

**3.    Hines has proven that but for counsel's deficient failure to consult with him about an appeal, Hines would have timely appealed.**

Hines testified that he wanted to appeal, and that he asked Attorney Patton to appeal the gun enhancement issue. Moreover, Attorney Patton testified that, in his opinion, an appeal based on the gun enhancement issue would not be frivolous (even if there was not a high likelihood of success).

Thus, Hines has satisfied the second <u>Strickland</u> prong, since Hines did request a timely appeal on this non-frivolous issue.

### III. CONCLUSION

Based on the above, the motion for relief under 28 U.S.C. § 2255 should be granted.

Respectfully submitted,

/s/ John J. Mead
John J. Mead, Esquire
Suite 800 Renaissance Centre
1001 State Street
Erie PA  16501
(814)  459-1726